UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| GUILLAUME TABIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-11132-LTS |
| | ) | |
| G. DEKEON, Haverhill Police Officer, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

June 24, 2019

SOROKIN, D.J.

In this action, pro se litigant Guillaume Tabia alleges that a state district court wrongly issued an abuse prevention order against him under M.G.L. ch. 209A ("ch. 209A"), which allows an application to seek a restraining order against a "family or household member." M.G.L. ch. 209A § 3. Tabia maintains that, based on the relationship between him and the alleged victim, any restraining order should have been issued pursuant to M.G.L. ch. 258E ("ch. 258E"), which does not require any particular relationship between the applicant and the defendant. See M.G.L. ch. 258E, § 3. Tabia, who is not a citizen of the United States, represents that he is now subject to removal from the United States because a ch. 209A restraining order was issued against him. He implies that, had the restraining order been issued under ch. 258E, he would not be facing removal. For the reasons stated below, the Court will order that this action be DISMISSED.

I. **Background**

Tabia commenced this action on May 16, 2019 by filing a complaint [ECF #1] against Haverhill Police Officer G. Dekeon, First Justice Stephen S. Abany of Haverhill District Court,

and a clerk magistrate at the Haverhill District Court.  He also filed a motion for leave to proceed in forma pauperis [ECF #2].  Tabia is currently confined at the Bristol County Jail and House of Correction as an immigration detainee.

In his complaint, Tabia alleged that on May 23, 2017, he was "maliciously enjoined with a domestic RO [Restraining Order] (c. 209) for a civil misdemeanor assault and battery instead of a civil RO (c. 258E) by the Commonwealth in complete disregard of the Haverhill District Court on the basis of my gender, race, contry [sic] of origin and social class."  Compl. at 4.  Tabia failed to specify the role each defendant played in the alleged misconduct.

In a memorandum and order dated May 17, 2019, the Court granted Tabia's motion for leave to proceed in forma pauperis.  Reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(b), the Court concluded that Tabia had failed to state a claim upon which relief may be granted because the complaint did not comply with the pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  The Court directed him to file an amended complaint in which he identified the alleged misconduct of each defendant.  The Court also noted that it appeared that claims against the judge and the clerk magistrate were would be barred by judicial and quasi-judicial immunity.

Tabia timely filed an amended complaint [ECF #7].  The exhibits to the amended complaint consist of: (1) the docket of the criminal prosecution against Tabia arising from the alleged events of December 1, 2016, indicating that he was charged with assault and battery and malicious damage to a motor vehicle; (2)  Officer DeKeon's incident report regarding the alleged events of December 1, 2016; (3) one page from a statement of facts in support of an application for a criminal complaint, signed by Office DeKeon (presumably against Tabia); (4) a ch. 209A abuse prevention order against Tabia signed by First Justice Abany on February 22 and March 1,

2017; (5) an application for a ch. 209A abuse prevention order against Tabia; and (6) a copy of M.G.L. ch 209A, § 1, which contains the definitions of certain terms used in ch. 209A.

In his incident report, Officer DeKeon states that, on December 1, 2016, he arrived at Tabia's residence after receiving a report of a disturbance. Officer DeKeon claims to have interviewed a male witness outside of the residence, who reported that he witnessed Tabia assault a female victim residing at that address and break the windows of her car. According to Officer DeKeon's report, he later interviewed the female victim at the hospital. Officer DeKeon states in his report that the victim told him that she and Tabia were just friends, that Tabia had briefly stayed at her residence because he was experiencing housing difficulties, that he had moved out a week ago, and that he had returned to the premises that morning to look for some of his belongs. Officer DeKeon further states that he informed the victim of her rights under ch. 209A, and that the victim indicated she wanted to go to court to get a restraining order against Tabia.

According to Tabia, Officer DeKeon should not have told the victim that she could seek a restraining order under ch. 209A. Tabia asserts that the witness "never mentioned [to Officer DeKeon] at any moment, any existing relationship enumerated under c. 209A § 1 which will be the basis of a domestic abuse prevention order." Amend. Compl. ¶ 2. Tabia further asserts that the victim's statement that they were only friends "clearly indicates that the incidence is not domestic in nature but rather civil—requiring a civil restraining order [under M.G.L.] ch. 258E." Id. ¶ 3. According to Tabia, "[a]ll the information necessary for the proper injunction [i.e., one under ch. 258E] were in the officer's possession through his own investigation but he chose to disregard them for some ulterior reasons." Id.

Tabia also expected First Justice Abany and the Clerk Magistrate "to verify and carefully analyze the allegations on the police reports and the court testimonies of the plaintiff . . . before deciding the type of injunction that is required instead of being subjective and completely turning the blind eye on the nature of the incident." Id. ¶ 4. Tabia states that careful attention to the statutory basis of the restraining order was important "[i]n light of the extreme and severe colateral [sic] consequences of the putative c.209A injunction (domestic abuse prevention order) which include deportation of a non-Citizen." Id.

Tabia asks that the Court "enjoin[] the proper injunctions necessary to the Judicial officials of Haverhill District Court (the defendants) for the colateral [sic] consequences . . . currently inflicted upon this plaintiff" and monetary relief from Officer DeKeon. Id. at 2.[1]

## II. Discussion

The amended complaint adequately identifies the alleged misconduct of each defendant, thus curing the pleading deficiency discussed in the Court's May 17, 2019 order. In addition, the issue of judicial and quasi-judicial immunity is not a bar to Tabia's claim because it is clear that he is not seeking monetary damages from First Justice Abany or the Clerk Magistrate.

Notwithstanding, the amended complaint fails to state a claim upon which relief may be granted against Officer DeKeon. Aside from Tabia's conclusory statements, nothing in the amended complaint suggests that Officer DeKeon violated Tabia's rights in advising the victim of her rights under ch. 209A. Under ch. 209A, "[a] person suffering from abuse from an adult or minor family or household member may file a complaint in the court requesting protection from

---

[1] A few days after filing the amended complaint, Tabia sent a letter [ECF #8] to clarify the meaning of his prayer for relief. The prayer for relief in the letter is substantially similar to that in the amended complaint.

such abuse." M.G.L. ch. 209A, § 3. The definition of "household member" includes "persons who . . . are or were residing together in the same household." M.G.L. ch. 209A, § 1. In this case, Tabia alleges that he and the victim had the same address. See Amend. Compl. ¶ 1. Officer DeKeon's report indicates that the victim told him that Tabia had resided with her briefly. Thus, Tabia was a "household member" for purposes of ch. 209A because he was residing or had resided with the victim. The absence of a romantic relationship between Tabia and the victim is inconsequential.[2]

It would appear that the claims against Judge Abany and the Clerk Magistrate would be doomed for the same reason. However, the Court is without jurisdiction to make that determination. Under 28 U.S.C. § 1257, the Supreme Court of the United States is the only federal court with jurisdiction to review a state court judgment. See 28 U.S.C. § 1257; see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005). Thus, under the Rooker-Feldman doctrine,[3] a federal district court cannot exercise subject matter jurisdiction over an action brought by a party who lost in state court and who is "seeking review and rejection of that judgment" in a lower federal court. Exxon Mobile, 544 U.S. at 291; see also id. at 292 ("The Rooker–Feldman doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over

---

[2] Further, even if DeKeon was mistaken in advising the victim that she could seek relief under ch. 209A—a hypothetical that is not supported by the alleged facts—said mistake would not constitute a violation of Tabia's federal rights.

[3] The term "Rooker-Feldman doctrine" is shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

5

state-court judgments, which Congress has reserved to this Court, see § 1257(a)." (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002))).[4]

Here, Tabia explicitly asks this Court to review and reject the judgments of the state court. Under the Rooker-Feldman doctrine, the Court lacks jurisdiction to do so. "[T]he proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps, 471 F.3d 220, 223 (1st Cir. 2006).[5]

### III. Conclusion

In accordance with the foregoing, the Court hereby orders that this action be DISMISSED.

SO ORDERED.

                                                 /s/ Leo T. Sorokin
                                                 UNITED STATES DISTRICT JUDGE

---

[4] The Rooker-Feldman doctrine does not apply to habeas petitions. See Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003). The Court notes that, on June 21, 2019, Tabia filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. See Tabia v. Souza, C.A. No. 19-11377-ADB (D. Mass.).

[5] Further, even where a claim against a judicial officer for conduct taken in such officer's judicial capacity is not jurisdictionally barred, injunctive relief cannot be granted "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.